SNEED, J.,
delivered the opinion of the Court.
The original bill was filed by Lumpkin, to have perfected his title to a lot of ground in Memphis, bought by him from James Wilson, as attorney in fact *556 of .Ruth Keene, who was the legal owmer of four-tenths thereof, as tenant in common with the other heirs of John A. Wilson, deceased.
The cross bill was filed by the children of Ruth Keene, she being dead, insisting on their title to the said lot of ground, and praying to have the deed to it made by James Wilson, as attorney in fact of their mother, declared null, as a cloud on their title.
The parties entered of record an agreement as to the facts, of which the following present the questions involved in the controversy:
Ruth Keene owned four-tenths, and Mrs. Talbot one-tenth of the lot in dispute. About the 23rd of July, 1867, each made and executed a power of attorney to James Wilson, one of which, viz.: that by Mrs. Talbot, is exhibited in the record, but that executed by Mrs. Keene, which is lost, was similar in tenor and effect to that executed by Mrs. Talbot.
These powers of attorney constituted James Wilson their attorney in fact, and empowered him to sell and dispose of their respective interests in. the said real estate described in the bill, in such manner and upon such terms as is recited in the aforesaid power of attorney, from Sarah R. Talbot, and to carry the same as therein authorized.
Early in September, 1867, negotiations were commenced on the part of said James Wilson, with complainant, for the sale of the said interests of Mrs. Keene and Mrs. Talbot, and on the part of complainant with the other legal heirs of Dr. J. A. Wilson, for the purchase of their individual interests in said realty; *557 and wben complainant had been satisfied by an examination of these said two powers of attorney by him and by his legal adviser, that said Wilson had full power to so dispose of these said interests, these negotiations were concluded on the 7th of September, 1867, by the purchase of these interests, and the execution of the conveyance from said Wilson to complainant, a copy of which is exhibited in the record.
After this deed was made and delivered, and before the powers of attorney were recorded, they were acci-dently lost. Mrs. Talbot afterward came into possession of the one executed by her, and the same is produced and on file. The one ..executed by Mrs. Keene was never recovered.
Mrs. Keene and Mrs. Talbot both lived in Texas when the powers of attorney were made; the latter still lives there, and the former is dead, leaving complainants in the cross-bill her only heirs.
The power of attorney from Mrs. Talbot to James Wilson, which is agreed to be similar in tenor and legal effect to that executed by Mrs. Keene, appointed him to be her true and lawful agent and attorney in fact, for her and in her name “to bargain, sell, alien, enfeoff, transfer, and convey, by deed 'in fee simple, all my individual interest, claim and demand, of, in and to the estates of John A. Wilson, and James B. Wilson, whether the same be real, personal, or mixed; to do and perform any and all acts and deeds necessary to be done, in and about the premises, to obtain my pro rata share of said estates, due or to become due; to sue and be sued, implead, and be impleaded; and *558 I do by these presents ratify and confirm all the lawful actings and doings/’ etc.
In his original bill complainant states that the interests ot Mrs. Keene and Mrs. Talbot in the lot were paid for by selling and delivering to James Wilson a stock of goods, wares and merchandise; and in his answer to the cross bill, he repeats the substance of his original bill. The first question presented on these facts is, whether the power of attorney authorized the agent to convey the lot for goods, wares and merchandise ? And the answer to this depends upon the question, whether he was thereby constituted a general or a special agent? The power confered was, “to bargain, sell, alien, enfeoff, transfer and convey, by deed in fee simple,” etc.; and “ to do and perform any and all acts and deeds, necessary to be done, in and about the premises.” The agency was clearly special, it was confined to selling and conveying the lot. There was no directions or instructions beyond the selling and conveying, and the doing of such things as might be necessary to carry out the power. Under this power the agent had no right to sell and convey for any other consideration than for money: ' 7 Hum., 41; 8 Hum., 132; 6 Hum., 62. The agency being special, the power is to be strictly construed. This is the settled rule in the construction of powers of attorney, and the principal can not be bound beyond the limits prescribed by himself: Bank of Mobile v. Andrews, 2 Sneed, 540.
The distinction between a general and special agent is laid down with clearness by Judge Kent, vol. 2. *559 p. 806. He says: “The special authority must be strictly pursued. Whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limits of his power.”
In the case before us the complainant says he examined carefully the power of attorney, and had it examined by his legal adviser, and that he made the purchase upon his own judgment and that of his legal adviser; that the agent had power to sell the lot for goods, wares and merchandise. He acted at his own peril, and got no title to the lot, unless the act of the agent was afterward ratified and confirmed by the principal: 7 Hum., 41; 8 Hum., 132; 6 Hum., 62; 8 Hum., 451.
It is insisted for complainant that he is not bound by the agreed case to abide by the construction of the powers conferred on the agent by the power of attorney from Mrs. Talbot, for the reason that it was part of the agreement that the answer of James Wilson to the original and cross bill should be read as evidence in the case. And it is argued that in his answer he proves that his powers were more extensive in the power of attorney from Mrs. Keene than from Mrs. Talbot. In his answer he says: “.That the contents of the power of attorney executed by Mrs. Keene are not remembered by him further than the effect and intent of the same, which was to invest him with power to dispose of the» land on such terms and conditions as to price, time and. payment as might seem best to him.” It is evident that he does not mean that the power of attorney contained any such *560 specifications of powers, for he says that he does not remember the contents of the power of attorney. We infer that he gives only his deductions from his construction of his powers, and that he does not mean that the specification of powers was not the same in the two papers. He and complainant and complainant’s legal adviser put the same construction on Mrs. Talbot’s power of attorney and acted on that construction. But even if this were not so, complainant is estopped by his agreement of record to deny that the lost power of attorney was similar, in tenor and legal effect, with the one executed by Mrs. Talbot.
The only evidence bearing upon the question of acquiescence or ratification by Mrs. Keene, is found in the answer of James Wilson, which by agreement of the parties is looked to as evidence. He says: “That he obtained the power of attorney executed by Mrs. Keene, while at the city of Memphis, Tenn., prior to the 6th day of September, 1867, and after fully advising her, the said Mrs. Keene, of the character of sale that could be made, and which was afterward made to complainant, as set forth in his original bill, to which he now refers, adopting the same as part of his answer.” He says also that after he received the goods he tendered them to her, and that he would dispose of them for her. He had no knowledge that she rejected the goods.
It is to be observed, that, according to the agreed facts, the two powers of attorney were executed about the 23d of July, 1867, and that early in September, 1867, negotiations were commenced with complainant *561 for the sale of the lot. Besides, complainant states in bis original bill, that early in September, 1867, James Wilson, as attorney in fact, opened a negotiation with him for the sale of the lot. Again, in his letter to Mrs. Keene, dated September 13, 1867, seven days after the sale, he tells her that he was forced to sell for what he could get, to prevent the sheriff from selling for a debt of about $422, and that he had not time to advise her of- the matter.
It is obvious that no reliance can be placed on his statement, that he had informed her of the character of trade he could make, before he got the power of attorney. It is contradicted by complainant, by the agreed facts, and by his own letter.
It is part of the agreed facts, that when Wilson offered the goods to Mrs. Keene, she refused to receive them, • or to settle with him in any way, and did so up to the time of her death. It is further shown by the evidence of L. D. McKissick, that when Wilson and complainant were negotiating the trade, as the friend of Mrs. Keene he protested against its confirmation. It is also in proof, that immediately after learning from Wilson what he had done, Mrs. Keene wrote to her father, charging that Wilson had defrauded her. Upon the whole, the proof entirely fails to show any acquiescence or ratification by her.
The result is, that the decree of the Chancellor is reversed; the deed made by Wilson to complainant for the lot was made without authority, and is a nullity, and should be set aside as a cloud upon the title of complainants in the cross bill.
*562 The original and amended bill will be dismissed, and tbe complainants in the crosé bill are entitled to the relief prayed for. Complainant in the original bill will pay all the costs.